NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-506

COMMONWEALTH

vs.

RICHARD MULCAHY, THIRD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

During an unsuccessful attempt to purchase Adderall, the defendant, Richard Mulcahy, III, stabbed the victim in the thigh, resulting in the victim's death. After a nine-day jury trial, the defendant was found guilty of armed robbery and involuntary manslaughter. He appeals, challenging the sufficiency of the evidence and claiming that the prosecutor's statements during venire, trial, and closing arguments require reversal. We affirm.

Background. We summarize the background of this case in the light most favorable to the Commonwealth. See Commonwealth v. Martin, 447 Mass. 274, 287 (2006).

Several days before the victim's death on February 13, 2019, the defendant and his girlfriend, while at the Department of Transitional Assistance (DTA), encountered the victim and his

girlfriend.  The victim and his girlfriend said that they had thirty-milligram pills of Adderall, which they would sell for ten dollars each.  Negotiations about the purchase of the Adderall took place over text messages and telephone calls for the next several days, but the parties never finalized a price or quantity for the Adderall, in part because the defendant and his girlfriend did not have enough money to complete the sale.

On February 13, 2019, the defendant and his girlfriend arrived at the victim's girlfriend's apartment to buy the drugs. The defendant came to the apartment with only twenty-five dollars in cash and a one-quarter ounce of marijuana to bargain with.  The victim handed the defendant a baggie containing pills for the defendant to inspect, but before a quantity or price had been agreed on, the defendant threw his money and marijuana on the bed and told his girlfriend, "Come on, let's go," as he began to leave the apartment with the pills.

The victim grabbed the defendant from behind and tried to pull him back inside the apartment.  The two men stumbled and fell onto a small landing outside the apartment, where the victim put the defendant into a headlock from behind.  During this struggle or shortly thereafter, the victim gained control of the pills.  While being held in the chokehold, the defendant stabbed the victim twice in the thigh which resulted in his death.

2

The defendant was indicted on one count of murder in the first degree, in violation of G. L. c. 265, § 1, and one count of armed robbery, in violation of G. L. c. 265, § 17. At the close of the Commonwealth's evidence at trial, the defendant moved for a required finding of not guilty. That motion was denied and the defendant's renewed motion at the close of all the evidence was also denied. The jury returned guilty verdicts for lesser included offense of involuntary manslaughter and armed robbery.[1]

Discussion. 1. Sufficiency of the evidence. The defendant first argues that the denial of his motion for a required finding of not guilty was error because the Commonwealth failed to establish the elements of armed robbery. In analyzing whether there is sufficient evidence to support a conviction, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).

---

[1] The defendant was later sentenced to from ten to twelve years in State prison for involuntary manslaughter and two years of probation with special conditions for armed robbery, which was to be served from and after the State prison sentence.

"The required mental state for armed robbery is intent to steal." Commonwealth v. Pimental, 454 Mass. 475, 480 (2009). "Armed robbery is defined as (1) larceny from a person (2) committed while armed with a dangerous weapon and (3) facilitated by actual or constructive force against the person." Commonwealth v. Joyner, 467 Mass. 176, 187 n.13 (2014). The defendant contends the Commonwealth failed to establish that he had the requisite mental state or used force to accomplish the robbery. We address each of these in turn.

a. Evidence of intent. The specific intent to steal is a necessary element of the crime of armed robbery. See Commonwealth v. Griffith, 404 Mass. 256, 260 (1989). The intent to steal must be formed before or during the assault. See Commonwealth v. Moran, 387 Mass. 644, 646 (1982). Since "intent is in someone else's mind . . . it can usually be ascertained only by the external, visible circumstances." Commonwealth v. Blake, 409 Mass. 146, 150 (1991).

Here, the Commonwealth offered sufficient evidence of intent to steal. The defendant's intent was evidenced by, inter alia, arriving at the apartment with less money and marijuana than he knew the Adderall would likely cost, throwing his money and marijuana on the victim's bed without negotiating a price for the sale, and attempting to leave with the pills. That he attempted to give the victim some compensation, namely the

4

twenty-five dollars and a one-quarter ounce of marijuana, does not detract from the fact that he attempted to leave the apartment with the pills without the victim first agreeing to a set amount of money from the defendant for and specific number of Adderall pills. See Commonwealth v. St. Hilaire, 470 Mass. 338, 345 (2015) ("although lack of consent [from the victim] is not an element of the offense, it is [an essential condition] of the crime of larceny"). Taking the pills without a firm offer of sale from the defendant, regardless of attempted compensation, is evidence that the jury could consider when deciding intent. Accordingly, there was sufficient evidence that the defendant intended to steal from the victim and, thus, sufficient evidence to satisfy the intent element of armed robbery.

b. Evidence of force. The defendant argues that the Commonwealth provided insufficient evidence of force because the stabbing was not to effect his escape, but rather was an act of self-defense that occurred after the robbery had ended.[2] To establish the force element of armed robbery, the Commonwealth must show that the defendant applied actual or constructive

_____

[2] The defendant also argues that the Commonwealth provided insufficient evidence of force because the stabbing was not applied with an intent to steal from the victim. Given our previous discussion of intent, we are not persuaded by this argument.

5

force.  See Commonwealth v. Joyner, 467 Mass. 176, 187-188 (2014).  This element may be met either through evidence that the defendant used force to accomplish the taking of the property or through evidence that the defendant used force to effect his or her escape.  See Commonwealth v. Rogers, 459 Mass. 249, 253, cert. denied, 565 U.S. 1080 (2011).  "Generally, in Massachusetts, one who commits an armed robbery cannot assert a claim of self-defense."  Id. at 260.  See Commonwealth v. Maguire, 375 Mass. 768, 773 (1978) ("it has been held that the right to claim self-defense may be forfeited by one who commits an armed robbery, even if excessive force is used by the intended victim or by any person intervening to prevent the crime or apprehend the robber").

Here, a review of the trial testimony supports the conclusion that the Commonwealth established sufficient evidence of force.  The undisputed facts at trial established that the defendant stabbed the victim twice which ultimately caused his death.  While the defendant testified to the contrary, a rational trier of fact could have found the defendant utilized this amount of force to effect his escape.  Accordingly, there was sufficient evidence to satisfy the force element of armed robbery.  See, e.g., Rogers, 459 Mass. at 253.

The defendant asks us to view the stabbing not as part of an attempt to escape with the pills, but instead as an act of

6

self-defense that occurred after the armed robbery had ended. But, as described above, the stabbing was designed to help effect the defendant's escape and thus meets the force requirement. To parse each step of the defendant's committing armed robbery and escaping to determine that the escape was not part of the robbery -- even if, for example, the defendant argued that the robbery ended when, in an attempt to escape the chokehold he or his girlfriend returned the pills to the victim -- would require us to segment the crime of armed robbery in a way our appellate courts have refused to do. See Rogers, 459 Mass. at 254. Furthermore, the defendant's proffered view does not comport with the Latimore standard. Therefore, the claim is unavailing.

2. Prosecutor's statements. Next, the defendant argues that the prosecutor asked an unduly prejudicial question during cross-examination of the defendant, inappropriately asked the defendant to comment on the veracity of another witness, made prejudicial arguments comparing an autopsy photograph of the victim to the defendant's booking photograph during closing arguments, and inappropriately referenced his status as working for an elected district attorney. The defendant argues that these errors amount to a "pattern of errors" which collectively require reversal. We address each of these arguments in turn.

7

a. _Cross-examination_. During cross-examination of the defendant, the prosecutor, after receiving some nonresponsive answers to questions regarding the defendant's actions after the stabbing, asked him the following question: "You killed Mr. Hickey, correct?" The question was objected to and the objection was sustained. The defendant argues that the question was merely designed to harass, annoy, or humiliate him. Later during cross-examination, when the prosecutor was inquiring about the defendant's precise location during the stabbing, the prosecutor asked the defendant as follows: "So when [the witness] testified, as you saw in this case, that you gentlemen were over here in the chair area, where he saw you jabbing [the victim], he was incorrect?" The defendant answered, "Yes." The defendant argues that both of these questions require reversal.

The first question was objected to, so we review for prejudicial error. See Commonwealth v. McCoy, 59 Mass. App. Ct. 284, 290 (2003). "As a general matter, trial attorneys are allowed to pursue vigorous cross-examination. However, there are limits." Commonwealth v. Fahey, 99 Mass. App. Ct. 304, 309 (2021). Questions which are merely designed to harass, annoy, or humiliate go beyond the bounds of proper cross-examination. See Commonwealth v. Johnson, 431 Mass. 535, 540 (2000). "[T]he fact that a question may be degrading is not, by itself, a barrier to its utterance," but such questions can only be asked

8

if the prosecutor reasonably believes a helpful answer is forthcoming and should not be asked when the question's likely impact is simply to inflame or degrade. Commonwealth v. Murphy, 57 Mass. App. Ct. 586, 590 (2003).

Although we do not have a recording of the cross-examination, but only a cold transcript, the question came after a series of responses to the prosecutor's questions that might be read to ridicule the prosecutor. The question was a non sequitur, and counsel for the defendant contemporaneously described it as "laced with acid." But, even assuming there was error in asking the question, the judge sustained the objection to the question. The defendant asked for nothing more, neither a curative instruction nor a mistrial. We review the unpreserved claim that striking the question was not adequate, for a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Given that the judge struck it, we see no substantial risk of a miscarriage of justice.

The prosecutor's question regarding the testimony of another witness was not objected to, so we review to determine whether there was error and, if so, whether it created a substantial risk of a miscarriage of justice. See Alphas, 430 Mass. at 13. We hold that this question was not inappropriate. "It is not improper for the prosecutor to point out . . . that

9

there were inconsistencies between the defendant's testimony and that of [a witness], so long as the defendant was not asked to assess the credibility of the [witness's] testimony" (quotation and citation omitted).  Id. at 18-19.  In Commonwealth v. Richenburg, 401 Mass. 663, 673-674 (1988), the court drew a distinction between isolated questions clarifying that the defendant and previous witnesses' answers conflict, which do not create a substantial risk of a miscarriage of justice, and questions which "create an issue of credibility between the defendant and other witnesses."  Alphas, supra at 18, quoting Richenburg, supra at 674.  The question in this case falls into the first category.  The prosecutor's isolated question simply confirmed that the defendant was stating something different than the previous witness.  Accordingly, there was no error.

b.  Closing arguments.  During closing arguments, the prosecutor presented the jury with a booking photograph of the defendant and compared it to an autopsy photograph of the victim, both of which had already been entered into evidence. Specifically, the prosecutor said, "Mr. Mulcahy was armed with this knife.  And he left the porch that afternoon looking like this.  Minor scrapes, uninjured.  [The victim] was unarmed.  And he left the porch that afternoon looking like this.  Fatal wounds to his right thigh, blood-soaked clothing."  The defendant argues that the purpose of this presentation was to

10

appeal to the sympathy of the jury and that reversal is required.  Because the admission of the photographs as evidence is not being argued on appeal and the defendant did not object to the prosecutor's closing argument, we review, "in the context of the arguments and the case as a whole," whether the improper statement and presentation of the photographs created a substantial risk of a miscarriage of justice.  Commonwealth v. Kolenovic, 478 Mass. 189, 201 (2017).  See Commonwealth v. Brum, 492 Mass. 581, 601 (2023).

A prosecutor should not play on the jury's sympathy or emotions in order to obtain a conviction.  See Commonwealth v. Teixeira, 486 Mass. 617, 630 (2021).  To that end, we do not allow prosecutors to tell the jury "to put themselves 'in the shoes' of the victim, or otherwise be asked to identify with the victim."  Commonwealth v. Bizanowicz, 459 Mass. 400, 420 (2011).

Where the defendant's defense at trial was that he was acting in self-defense, highlighting the lack of injury to the defendant while emphasizing the victim's wounds was appropriate. Even if we were inclined to consider this statement and presentation improper, where the photographs were already entered into evidence and the jury were free to consider them during deliberations, the prosecutor's efforts to draw the jury's attention to them did not create a substantial risk of a

11

miscarriage of justice.[3]  Similarly, the prosecutor's statements framing the context in which the jury should carefully consider the photographs also did not create a substantial risk of a miscarriage of justice.

c.  <u>Statements during venire</u>.  During jury empanelment, the prosecutor introduced himself to the prospective jurors as working for the "elected [d]istrict [a]ttorney."  The defendant argues that, by mentioning that he was employed by the elected district attorney, this was an inappropriate representation to the jurors that the prosecutor represents the citizens of the Commonwealth against the defendant.  The defendant is correct that prosecutors are not allowed to insinuate that they work for or represent the jury as citizens of the Commonwealth.  See <u>Commonwealth</u> v <u>Scesny</u>, 472 Mass. 185, 200 (2015) ("the prosecutor's characterization of his role as representing the 'citizens' ran the risk of suggesting that the prosecutor was representing the jurors-as-citizens against the defendant").  Because there was no objection at trial, we review to determine if any misconduct created a substantial risk of a miscarriage of justice.  See <u>Alphas</u>, 430 Mass. at 13.  See also <u>Commonwealth</u> v. <u>Silva</u>, 455 Mass. 503, 514 (2009).

---

[3] We note that defense counsel requested that one booking photograph be admitted into evidence.

12

Neither the rationale for nor the purpose of the prosecutor's statement that he worked for the elected district attorney is obvious, though presumably the prosecutor thought there was something useful about the formulation as he used it twice. Given the risk presented by stating that the prosecutor is elected by the people, it would have been better left unsaid. Nonetheless, even assuming there was error, something we need not and do not decide, we are not persuaded that it created a substantial risk of a miscarriage of justice.

d. Constellation of factors. Lastly, the defendant argues that the prosecutor's conduct we have described amounted to a "pattern of errors," which he argues created a substantial risk of a miscarriage of justice. To be sure, we do not look at the prosecutor's conduct in a vacuum and instead view each claimed error by looking at their combined effect. See Commonwealth v. West, 44 Mass. App. Ct. 150, 151 (1998). Simply put, the prosecutor's conduct does not amount to a "pattern of errors," and they do not collectively create a substantial risk of a miscarriage of justice. Accordingly, we are unpersuaded by this argument.

Conclusion. As there was sufficient evidence to convict the defendant of armed robbery and no trial conduct which

13

requires reversal, we affirm the defendant's convictions.

Judgments affirmed.

By the Court (Rubin, Neyman &
   Walsh, JJ.[4]),

*Assistant Clerk*

Entered:  January 19, 2024.

---

[4] The panelists are listed in order of seniority.