NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-574                                            Appeals Court


COMMONWEALTH  vs.  MIGUEL FANTAUZZI.


No. 15-P-574.

Suffolk.     October 4, 2016. - March 21, 2017.

Present:  Kafker, C.J., Trainor, & Henry, JJ.


Homicide.  Self-Defense.  Felony-Murder Rule.  Firearms.
    Practice, Criminal, Instructions to jury.



Indictments found and returned in the Superior Court
Department on March 25, 2013.

The cases were tried before Christine M. Roach, J.


Katherine C. Riley for the defendant.
Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.


KAFKER, C.J.  The defendant, Miguel Fantauzzi, was

convicted by a jury of voluntary manslaughter on an indictment

that charged murder in the second degree.[1]  On appeal, he claims

_____

      [1] The defendant was also convicted of possession of a
firearm without a license.  See G. L. c. 269, § 10(a).  He does
not challenge that conviction on appeal.  He was found not

that the trial judge's jury instructions regarding the relationship of self-defense to felony-murder and voluntary manslaughter were erroneous and that the Commonwealth's closing argument contained improper statements.  We agree that the instructions in this particularly complicated case, where the underlying felony did not mark the defendant as either the aggressor or initiator of the violence, were incorrect, and therefore we reverse the conviction of voluntary manslaughter.

Background.  The jury were warranted in finding the following facts.  On October 27, 2012, the victim, Christopher Powell, made plans with the defendant via text message to purchase drugs from the defendant.  At 6:29 P.M., the defendant called the victim's cellular telephone (cell phone) and talked with him for a little over a minute.  Shortly thereafter, the defendant entered the rear passenger seat of the victim's sport utility vehicle (SUV), which was parked on the street near 50 Clark Avenue in Chelsea.  The victim sat in the driver's seat, and his friend, Robert Dobay, sat in the front passenger seat.

After the defendant entered the SUV, the drug deal went awry.  The defendant, who had brought a loaded firearm to the meeting, fired two shots inside the SUV.  The defendant got out of the SUV, which began rolling until it hit the vehicle in

---

guilty of armed assault with the intent to murder and assault and battery by means of a dangerous weapon.

front of it.  The defendant then fired two more shots at the SUV, one of which shattered the back passenger side window and the other of which went through the front passenger door, grazing Dobay's leg.  Dobay testified that after the shots were fired, he jumped out of the SUV and began running down Clark Avenue.  As Dobay ran, he looked back and saw the defendant run to the SUV.  Dobay continued to run, screaming for help, and the defendant began to run in the same direction.  The defendant eventually arrived at the apartment where the mother of his son lived.

Residents of an apartment building near 50 Clark Avenue testified that they heard gunshots on the night of the incident and went outside to the SUV, where they found the victim slumped over the steering wheel, bleeding profusely.  The victim died from a large gunshot wound to his left chest.  He also suffered two gunshot wounds to his scrotum and multiple gunshot wounds to his arms and legs.

Police officers responding to the incident found a black stun gun on the floor beneath the SUV's steering wheel, an unsheathed knife between the driver's seat and the door frame, a digital scale on top of the vehicle's center console, and the victim's cell phone.  Responding officers also recovered two discharged cartridge casings inside the SUV, one in the rear passenger's seat and the other toward the middle of the back

seat, as well as four discharged casings in the street near the SUV. Two spent projectiles were recovered from the victim's body.

Defense. The defendant testified at trial as follows. On the day of the incident, the defendant had agreed to sell the victim ten grams of heroin, and told the victim, via text message, to meet him at 50 Clark Avenue. Prior to meeting the victim, the defendant armed himself with a gun, because it was getting dark, and he had been robbed twice before at night in Chelsea. When he arrived at 50 Clark Avenue that night, the defendant called the victim and asked the victim to meet him by the stairs. Instead, the victim asked the defendant to meet him in his SUV, which was parked on Clark Avenue. After getting into the victim's SUV, the defendant handed the drugs to the victim, who placed them on an electronic scale sitting atop the SUV's center console. The man in the front passenger seat then reached around the seat, held a knife to the defendant's throat, and said, "[G]ive me everything you got or I'll stab you."

The defendant went to reach for the passenger side door, but when he tried to open it, the victim grabbed the defendant's jacket with his right hand and pulled him back into the SUV. With his left hand, the victim reached toward the defendant with a powered-on stun gun. The front passenger reiterated, "Give me everything you got or I'll fucking stab you." The defendant

managed to slap the knife away from the front passenger's hand before grabbing his own firearm. Without aiming, the defendant fired two shots inside the SUV. Then, he dove out of the SUV and fell to the ground. While on the ground, he heard another door of the SUV open, and he fired two more times toward the front passenger side of the vehicle. He stood up, fired two more shots into the air, and began walking quickly down Clark Avenue.

The defendant eventually arrived at an apartment at 51 Parker Street to look for the mother of his son. At the apartment, the defendant met Jeffrey Martinez, who saw him looking panicked and crying. The defendant told Martinez that someone had tried to rob him. The defendant also introduced testimony from Detective Kevin Witherspoon, a computer forensic examiner, regarding text messages sent from the victim's cell phone the night before the incident stating, "I stuck somebody up tonight. . . . I robbed somebody for their drugs again."

The defendant testified that after the shooting, he dyed his hair in order to change his appearance, fled to New York, and disposed of the gun used in the shooting.

Jury instructions. At trial, the jury were instructed on two theories of murder: murder in the second degree, and felony-murder in the second degree. The predicate felony for felony-murder in the second degree was unlawful possession of a

firearm.  The jury were also instructed on voluntary manslaughter and self-defense.

Prior to charging the jury, the judge discussed the wording of the voluntary manslaughter instruction at length with the prosecutor and defense counsel.  The discussion began with the judge asking whether the jury must first find the defendant not guilty under both theories of murder in the second degree before considering voluntary manslaughter.  The prosecutor and defense counsel both answered yes, but defense counsel qualified his answer with, "to an extent."[2]  When it became clear the judge meant to instruct the jury that voluntary manslaughter was a lesser included offense of felony-murder in the second degree,

---

[2] The following exchange occurred:

The court:  "In order to reach the manslaughter questions, does not the jury have to find essentially against the Commonwealth with respect to each of the theories of murder?"

Prosecutor:  "If I'm understanding you correctly, they would have to find him not guilty for second degree felony-murder as well as not guilty for sort of standard second degree murder, and the[n] consider manslaughter."

The court:  "Right."

Prosecutor:  "I would agree. . . ."

Defense counsel:  "I have a different position.  My position is that the manslaughter, the lesser included of manslaughter would only apply to the general theory of murder in the second degree.  It would not apply to the -- I'm sorry, I mis-spoke.  I would agree with that, Your Honor, to an extent, yes."

defense counsel stated his disagreement.  The judge then asked defense counsel why he would not want a "defense-friendly charge," and defense counsel did not reiterate his disagreement.[3] The judge then told the prosecutor and defense counsel that she thought "the correct statement of the law . . . is to tell [the jury] that manslaughter is an option on both theories [of murder in the second degree], but only if they first find against the Commonwealth on both theories."  Both defense counsel and the prosecutor agreed this was correct.  A few minutes later, however, the prosecutor clarified that she did not believe voluntary manslaughter was a lesser included offense of felony-

---

[3] Specifically, the parties responded as follows:

The court:  "I say [in the instructions], 'If you find the defendant not guilty of murder in the second degree on either theory, you shall consider manslaughter.'  And I thought what we just said it should say is, 'If you find the defendant not guilty of murder in the second degree on both theories.'"

Prosecutor:  "I would agree."

". . ."

Defense counsel:  "I'm going to change my position. Manslaughter should only be applied as to the general theory of murder in the second degree, not as to felony-murder."

The court:  "All right, this is what I don't understand about that position.  Isn't manslaughter a defendant-friendly charge?  And why wouldn't you want the option?"

Defense counsel:  "Well, I want the option."

murder in the second degree.[4]  Not only did defense counsel
eventually assent to an instruction that voluntary manslaughter
was a lesser included of felony-murder in the second degree, he
also pressed the judge, albeit unsuccessfully, to include a
fourth element in the charge of felony-murder requiring that the
Commonwealth prove the absence of mitigating circumstances, and
he repeatedly stated, "[M]y position [is] that [self-defense is]
an absolute defense to all charges of murder, all theories, and
all lesser included offenses."  Self-defense was the essence of
the defense in the instant case.

The judge instructed the jury regarding murder in the
second degree in accordance with the Model Jury Instructions on
Homicide 57-58 (2013) (Model Instructions), including a detailed
explanation of the requirement that the Commonwealth must prove
that the defendant did not act in self-defense:  "A person is
not guilty of any crime if he acted in proper self-defense.
. . .  If the Commonwealth fails to prove beyond a reasonable
doubt that the Defendant did not act in proper self-defense,
then you must find the Defendant not guilty."  The judge also
instructed the jury that the Commonwealth must prove the absence
of mitigating circumstances.[5]

---

[4] The prosecution repeated this objection thereafter.

[5] The instruction included a description of each of the
mitigating circumstances of heat of passion on reasonable

The judge also instructed the jury on felony-murder in the second degree, identifying the underlying felony as the unlawful possession of a firearm and making clear that the jury must determine that the felony was committed with a conscious disregard for the risk to human life.[6]  See Model Instructions

provocation, heat of passion induced by sudden combat, and the use of excessive force in self-defense.

[6] The felony underlying a charge of felony-murder must be inherently dangerous or committed with a conscious disregard for human life.  Decisional law has identified certain felonies that are inherently dangerous as a matter of law, such as arson, rape, burglary, armed robbery, and armed home invasion.  See e.g., Commonwealth v. Matchett, 386 Mass. 492, 505 n.15 (1982); Commonwealth v. Wadlington, 467 Mass. 192, 208 (2014).  Because the risk to human life is implicit in the intent required for any such felony, a jury should be instructed that the felony is inherently dangerous as a matter of law.  See Commonwealth v. Cook, 419 Mass. 192, 206 (1994); Commonwealth v. Wadlington, supra.  The second category of offenses involve felonies that are not inherently dangerous in their commission and therefore require the Commonwealth to prove the defendant committed the crime with a conscious disregard of the risk to human life.  See Commonwealth v. Matchett, supra at 508; Commonwealth v. Moran, 387 Mass. 644, 650-651 (1982).  The underlying felony at issue in this case, the unlawful possession of a firearm, falls within the latter category, and the jury were properly instructed that they must determine whether it was committed with a conscious disregard of risk for human life.  See Commonwealth v. Ortiz, 408 Mass. 463, 466-467 (1990) (jury could have found that where defendant illegally carried loaded firearm in vehicle, crime was committed with conscious disregard for risk to human life where defendant and his brother were looking for individual involved in feud); Commonwealth v. Garner, 59 Mass. App. Ct. 350, 358 (2003) (smuggling gun into crowded nightclub where shots had been fired in past constituted evidence of conscious disregard of risk to human life).  The defendant properly does not dispute that the illegal possession of a firearm may properly constitute the predicate felony in a charge of felony-murder in the second degree.

56, 58-60. With regard to felony-murder, the judge instructed the jury that the Commonwealth was "not required to prove the absence of self-defense to prove felony-murder in the second degree," and that "[t]herefore, the instruction on self-defense I have just described . . . does not apply to the Commonwealth's theory of second degree felony-murder." The judge further instructed the jury that "if you find the Defendant not guilty of murder in the second degree and not guilty of second degree felony-murder, you shall consider whether the Commonwealth has proved the Defendant guilty beyond a reasonable doubt of the lesser included offense of voluntary manslaughter."

With regard to manslaughter, the judge stated:

"A killing that would otherwise be murder in the second degree is reduced to the lesser included offense of voluntary manslaughter where the Commonwealth has failed to prove that there were no mitigating circumstances. . . . In other words, a killing that would otherwise be murder under either of the two theories of murder described above is reduced to voluntary manslaughter if the Defendant killed someone because of heat of passion on reasonable provocation or heat of passion induced by sudden combat."

At the end of the voluntary manslaughter instruction, the judge stated:

"I have already told you that to prove the Defendant guilty of murder in the second degree under its first theory,[7] the Commonwealth is required to prove . . . that the Defendant did not act in the proper exercise of self-defense. If the Commonwealth proves that the Defendant did not act in proper self-defense solely because the Defendant

---

[7] The judge here referred to "standard second degree murder."

used more force than was reasonably necessary, then the Commonwealth has not proved that the Defendant committed the crime of murder. But if the Commonwealth has proved the other required elements, you shall find the Defendant guilty of voluntary manslaughter. I repeat that the element of self-defense does not apply to the Commonwealth's theory of second degree felony-murder."

At the end of the jury instructions, the judge heard the prosecutor's and defense counsel's objections at side bar. Defense counsel objected to the jury "not being instructed on self-defense with regard to felony murder and/or that self-defense is an absolute defense as to all murder charges and all theories and lesser included offenses of murder." The judge noted the objection but made no other reply.

On the first day of jury deliberations, the jury submitted a question to the judge, reading, in relevant part, "Please instruct on voluntary manslaughter as if it were the only indictment. We are having trouble unravelling voluntary manslaughter's interaction with the other two theories of [second] degree murder. In particular, we need to know the connection to self-defense and mitigating circumstances." After consulting with counsel, the judge called the jury back into the court room and read the model instruction for voluntary manslaughter recommended in the absence of a murder charge, which included the element that "the defendant did not act in

proper self-defense."[8]  Model Instructions 71-72.  Defense counsel objected to the judge "failing to . . . instruct[] the jury that self-defense is an absolute defense, and . . . not re-instructing the jury on self-defense as it specifically applies to manslaughter."

A few hours later, the jury submitted another question, which indicated their confusion regarding the relationship between self-defense and voluntary manslaughter as a "lesser included offense" of felony-murder:

> "The jury is confused by . . . your supplementary instruction:  'the defendant did not act in proper self-defense.'

> "Compared to your original instructions . . . :  '. . . the element of self-defense does not apply to . . . second degree felony-murder.'

> "We interpret your sentences . . . as indicating that felony-murder can be reduced to voluntary manslaughter:  '. . . under either of the two theories of murder' . . .

> "Our question is whether felony-murder under mitigating circumstances is reducible to voluntary manslaughter without considering self-defense."

---

[8] The judge's instructions, which were identical to the model instruction, were as follows:

> "To prove the defendant guilty of voluntary manslaughter, the Commonwealth must prove beyond a reasonable doubt the following elements.  One, the defendant intentionally inflicted an injury or injuries on the victim likely to cause death.  Two, the defendant caused the death of the victim.  Three, the defendant did not act in proper self-defense."

Before responding to the question, the judge heard from both the prosecutor and defense counsel. The prosecutor stated that a "yes" answer would be consistent with the judge's previous instructions, but advised the judge to answer "no," because consistent with her previous position, she did not think voluntary manslaughter was a lesser included offense of felony-murder. Defense counsel agreed that voluntary manslaughter was not a lesser included offense of felony-murder, but stated that in the interest of consistency, the judge should answer "yes," while specifying that the jury should consider self-defense on the issue of voluntary manslaughter. The judge rejected the prosecutor's approach, and said that following defense counsel's approach would "overcomplicat[e] matters." The judge told defense counsel that "yes" was a "defense-friendly answer," and "I'm not sure how I could do better . . . by the defense than to say yes."

After consulting with the defendant, defense counsel told the judge that "my position would be that the Court simply answer yes, that felony-murder under mitigating circumstances is reducible to voluntary manslaughter without considering self-defense." Defense counsel then added, "I would reiterate my request that the jury also be told that they should consider the issue of self-defense if they're considering the issue of manslaughter under either theory." The judge responded to the

jury's question as follows:  "Under the circumstances of this case the answer to this question is yes."

The jury returned a verdict of guilty of the lesser offense of voluntary manslaughter without identifying whether the verdict was based on mitigation of murder in the second degree, mitigation of felony-murder in the second degree, or on the conclusion that the separate offense of voluntary manslaughter had been proven.

Legal analysis.  1.  Jury instructions.  The defendant argues that the trial judge erred in instructing the jury that they could reduce felony-murder to voluntary manslaughter without considering self-defense.  He claims that in the particular circumstances of this case, he was entitled to a self-defense instruction on the felony-murder charge and the judge should have provided clear guidance to the jury that they could not reduce felony-murder to voluntary manslaughter without considering self-defense.  In addition, the defendant argues that it was error for the judge to instruct the jury that felony-murder could be reduced to voluntary manslaughter.

We address only the defendant's argument that he was entitled to an instruction on self-defense,[9] because we conclude

---

[9] The defendant also argues that an instruction on mitigation based on excessive force in self-defense should have been given, but because he was convicted of voluntary manslaughter, it is not in any way clear how such an instruction

it is dispositive.  The Commonwealth tried the murder indictment on two theories, murder in the second degree, and felony-murder in the second degree.  The judge instructed the jury on self-defense in relation to murder in the second degree, but in accordance with the Model Instructions 18, 55, the judge made clear that self-defense was not a defense to felony-murder.  During deliberations when the jury sought confirmation of this point, the judge affirmed that they were not to consider self-defense in relation to felony-murder.

In support of this rule, the Model Instructions cite only two cases, Commonwealth v. Griffith, 404 Mass. 256, 264-265 (1989), and Commonwealth v. Smith, 459 Mass. 538, 548 (2011).  Model Instructions 55 n.128.  The underlying felony in Griffith, supra at 257, was an armed robbery, and in Smith, supra at 541, it was an armed home invasion.  In both cases, the defendant initiated the attack by making demands at gunpoint, but the killing was prompted by the victim's resistance.  See Griffith, supra at 265; Smith, supra.  In Griffith, the court recognized that "self-defense ordinarily cannot be claimed by a person who provokes or initiates an assault unless that person withdraws in good faith from the conflict and announces his intention to retire," and rejected the claim, noting that "[t]he right to

---

in relation to the felony-murder charge could have benefited him.

claim self-defense may be forfeited by one who commits an armed robbery, even if excessive force is used by the intended victim. . . ." Griffith, supra at 264-265, quoting from Commonwealth v. Maguire, 375 Mass. 768, 772-773 (1978). After engaging in a similar analysis, the court in Smith, supra at 548, ruled that "[s]elf-defense is inapplicable to a charge of felony-murder," and this rule has been incorporated into the Model Instructions.

This decisional history suggests "[t]he rationale for this rule is that the nature of the underlying felony marks the defendant as the 'initiating and dangerous aggressor.'" Commonwealth v. Rogers, 459 Mass. 249, 260 (2011), quoting from Commonwealth v. Garner, 59 Mass. App. Ct. 350, 363 n.14 (2003). "The present case, however, may not fit well within that general rule." Ibid. Here, viewing the evidence in the light most favorable to the defendant, as is required to determine whether an instruction on self-defense was warranted, the evidence showed that the defendant only used the firearm once the drug deal went awry and after the victim pointed a taser at him and the victim's compatriot held a knife to the defendant's throat. See generally Commonwealth v. Pike, 428 Mass. 393, 395 (1998); Commonwealth v. Lopez, 474 Mass. 690, 696 (2016). Massachusetts decisions stating that a defendant who engages in a felony forfeits the right of self-defense "did not in arise in such a context." Commonwealth v. Rogers, supra at 261. Rather, the

felonies in these cases defined the defendant as the initiator of the violence. See, e.g., Commonwealth v. LePage, 352 Mass. 403, 419 (1967) (no manslaughter instruction appropriate where crime occurred during armed assault with intent to rob); Commonwealth v. Evans, 390 Mass. 144, 145, 153 (1983) (defendant not entitled to self-defense instruction where underlying felony was armed assault with intent to rob); Commonwealth v. Pagan, 440 Mass. 84, 91 (2003) ("[T]he defendant and his companions were the intruders and instigators of the deadly confrontation, and thus [in case involving armed home invasion], cannot claim self-defense").

The defendant distinguishes the factual circumstances in his case and the felony involved. He argues that he was "not the first aggressor, [and] the offense of unlawful possession of a firearm is not automatically a proper predicate felony for invocation of the felony-murder doctrine." Therefore, in contrast to other felony-murder cases, he argues the jury must be instructed on self-defense and excessive force in self-defense in these circumstances. He maintains that these instructions were relevant and necessary because the Commonwealth was required to prove that he committed the felony in conscious disregard for human life;[10] he contends that the

---

[10] The elements of felony-murder in the second degree are as follows:

Commonwealth could not do this, because the actions relied on to prove a conscious disregard for human life were undertaken in self-defense.

Whether the defendant was entitled to a self-defense instruction for felony-murder purposes in these circumstances presents a novel, unsettled question of law. It appears that

---

"1. The defendant committed or attempted to commit a felony with a maximum sentence of less than imprisonment for life.

"2. The death occurred during the commission or attempted commission of the underlying felony.

"3. The underlying felony was inherently dangerous (or) the defendant acted with a conscious disregard for the risk to human life."

Model Instructions 60. See generally Commonwealth v. Matchett, 386 Mass. at 506-508(1982); Commonwealth v. Moran, 387 Mass. 644, 648 (1982); Commonwealth v. Rolon, 438 Mass. 808, 823 (2003). See also note 6, supra.

The only difference between felony-murder in the first degree and felony-murder in the second degree is that the felony for the former offense must be punishable by life in prison. See Commonwealth v. Burton, 450 Mass. 55, 57-60 (2007); Model Instructions 51, 60.

We note that there is no uniformity regarding felony-murder within the United States: some States have abolished the crime, and others have significantly departed from the traditional formulation, like that in Massachusetts. Commonwealth v. Tejeda, 473 Mass. 269, 277 n.9 (2015). The Model Penal Code has abandoned this formula, "requiring the homicide to be purposeful, knowing, or reckless in order to constitute murder, but providing for a rebuttable presumption of recklessness where the homicide occurred during the commission of certain felonies. Model Penal Code §§ 1.12(5), 210.2(1)(b) (1985)." Commonwealth v. Tejeda, supra.

trial judges in similar cases have struggled with the general rule that self-defense is inapplicable to felony-murder, a point that is evident in our appellate decisions. There are a variety of felony murder cases in which an instruction on self-defense has been requested and given without objection in such circumstances. See, e.g., Commonwealth v. Rogers, 459 Mass. at 261 (self-defense instruction given where defendant stabbed store employees who chased and assaulted defendant after he had shoplifted items); Commonwealth v. Garner, 59 Mass. App. Ct. 350, 363 n.14 (2003) (where underlying felony was unlawful possession of firearm, jury were instructed on self-defense). See also Commonwealth v. Roderick, 429 Mass. 271, 272-273, 278 n.2 (1999) (self-defense instruction given where defendant claimed he shot victim when, after trying to negotiate drug sale, victim came at him with machete). In none of these cases was the appellate court required to rule on the propriety of the self-defense instruction, but there is a recognition that these cases differ from ordinary felony-murders in which a defendant is the first aggressor and a self-defense instruction has been ruled inappropriate.

"Cases in other jurisdictions are split on the application of the defense of self-defense to a charge of felony-murder." Commonwealth v. Rogers, 459 Mass. at 260 n.15. This is true even in the context of drug sales gone bad, where the defendant

is not the initiator of the violence. See Perkins v. State, 576 So. 2d 1310, 1311 (Fla. 1991) (defendant entitled to self-defense instruction where he and victim were engaged in drug deal and victim was first to threaten deadly force). Compare State v. Mitchell, 262 Kan. 687, 696 (1967) (defendant not entitled to self-defense where, during drug sale in cab of victim's truck, defendant shot and killed victim after victim allegedly fired first shot). See Davis v. State, 290 Ga. 757, 758-759 (2012) (self-defense is permitted in certain instances of felony murder, but shooting that occurs during felony drug deal is not such felony); People v. Walker, 908 N.Y.S. 2d 419, 425 (2010) (felony-murder statute limits felonies to which it applies to certain enumerated crimes including robbery, burglary, kidnapping, arson, and rape).

We conclude that the general rule that self-defense is not applicable to felony-murder does not apply in the circumstances of this case. Where the felony was not inherently dangerous, and the defense was based on the assertion that the defendant was not the aggressor and initiator of the violence, an instruction on self-defense in relation to felony-murder should have been given.[11] See generally Commonwealth v. Kendrick, 351

---

[11] There is no live dispute that the facts here support a self-defense instruction, as evinced by the jury having been instructed on self-defense in relation to murder in the second degree.

Mass. 203, 211 (1966); Commonwealth v. Pike, 428 Mass. 393, 395 (1998) ("A defendant is entitled to a self-defense instruction if any view of the evidence would support a reasonable doubt as to whether the prerequisites of self-defense were present").  We do so recognizing that this is a very close question, because bringing a firearm to a drug transaction presents obvious risks of violence.

Because the defendant requested an instruction on self-defense with respect to felony-murder in the second degree and objected when it was not given, we review to determine whether the error was prejudicial.  Commonwealth v. Graham, 62 Mass. App. Ct. 642, 651 (2004).  That standard requires that the Commonwealth show "with fair assurance" that the error did not "substantially sway[ ]" the verdict in the case.  Commonwealth v. Rosado, 428 Mass. 76, 79 (1998), quoting from Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).  We cannot so conclude for the following reasons.

In this case the jury returned their verdict without specifying the theory of culpability, and therefore it is not clear whether the defendant's conviction of voluntary manslaughter resulted from the mitigation of murder in the second degree or the reduction of felony-murder to voluntary manslaughter.  See, e.g., Commonwealth v. Brown, 470 Mass. 595, 601 & n.12 (2015).  See also Commonwealth v. Accetta, 422 Mass.

642, 646 (1996); Commonwealth v. Morse, 468 Mass. 360, 376 (2014). With respect to the former theory, the jury received correct instructions on self-defense and excessive force in self-defense, and their respective relationships to verdicts of not guilty and guilty of voluntary manslaughter, and the defendant does not contend otherwise. With respect to felony-murder in the second degree, however, the jury were specifically and erroneously instructed that they could reduce felony-murder to voluntary manslaughter without considering self-defense. This was confusing and incorrect. Most importantly, they were not instructed, as the defendant requested, that self-defense was an absolute defense that should result in a verdict of not guilty of both felony-murder and voluntary manslaughter. This was reversible error. Because we conclude that the defendant was entitled to such an instruction, and because the jury's verdict may have been the result of reducing felony-murder in the second degree to voluntary manslaughter, we cannot say that the elimination of self-defense from this calculus did not substantially sway the verdict when self-defense was the defendant's primary defense. See Commonwealth v. Graham, 62 Mass. App. Ct. at 651; Commonwealth v. Eberle, 81 Mass. App. Ct. 235, 241 (2012) (substantial risk of miscarriage of justice

where failure to give self-defense instruction deprived defendant "of his primary argument of defense").[12]

Conclusion.  We reverse the defendant's conviction of voluntary manslaughter and set aside that verdict.

So ordered.

---

[12] Because the other issues will not reoccur at a new trial, we need not address them. We trust that any stereotypical distinctions drawn between people from the city and suburbs will be avoided.